UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00143-TBR

SHERRIE GRIFFEY, PLAINTIFF

v.

WILLIAM ADAMS, II, et al., DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon three Motions. First, Defendant Lourdes Ambulatory Surgery Center, LLC, ("Lourdes"), has moved for partial summary judgment on Plaintiff Sherrie Griffey's, ("Griffey"), claim for punitive damages and willful/wanton negligence against it. [DN 29.] Second, Defendant William Adams, II, ("Adams"), has moved for partial summary judgment on Griffey's claims for punitive damages and willful/wanton negligence against him. [DN 45.] Third, Griffey has moved for partial summary judgment as to Lourdes's and Adams's, (collectively, "Defendants"), liability in this matter. [DN 43.] The merits of these motions are discussed below.

**A. Factual Background**

This case arises out of the doctor-patient relationship between Adams and Griffey. "Adams is a doctor of podiatric medicine who is board certified in foot surgery and reconstructive rearfoot and ankle surgery," and "has practiced at The Orthopaedic Institute of Western Kentucky since 2011." [DN 1, at 1.] Griffey suffered from pain in her left foot, an ailment for which she sought treatment from Adams. [*Id.* at 1-2.] Throughout the course of their doctor-patient relationship, "Griffey had had previous treatments for her left foot paint with Adams including stretching, icing, shoe changes, inserts and two corticosteroid injections…, all with no improvement…." [*Id.* at 2.] Thereafter, on August 31, 2015, Adams instructed Griffey

1

that she suffered from "chronic plantar fasciitis, left and large infracalcaneal heel spur," and discussed the option of surgical intervention with her. [*Id.*] Griffey decided to proceed with the surgery, which took place at Lourdes on September 15, 2015. [*Id.* at 2-3.] Adams conducted the surgery. [*Id.* at 3.]

Griffey's pre-operation surgery order, electronically signed by Adams, provides "operative consent" concerning "plantar fascia release with heel spur resection-left foot." [DN 44-3, at 1.] Likewise, Lourdes's consent form, signed by Griffey, authorized Adams to perform "the following operation or procedure: plantar fascia release with heel spur resection left foot." [DN 44-4, at 1.] However, when Adams began the surgery at Lourdes at approximately 12:08 p.m., [DN 44-8, at 11 Day Dep., p. 16], "[a] tourniquet was placed about her *right* thigh." [DN 44-5, at 1 (Lourdes Procedure Note) (emphasis added).] Then, "[a]n ankle block was performed on the right extremity," and "[t]he right lower extremely was then prepped and draped in usual sterile fashion." [*Id.*] Thereafter, "[a] skin incision was started" on Griffey's right ankle, at which time the anesthesiologist present in the operating room "related that his chart said left [ankle.]" [*Id.*] "The nurse, [Dana Day, ("Day")], again checked the cart, and the chart did say left," and so Adams stitched up Griffey's right foot and commenced the correct operation on Griffey's left foot. [*Id.* at 1-2.]

In her Complaint, Griffey alleges that, as a result of the operation and the erroneous incision made by Adams into her right foot, she was rendered immobile, as "both her left and right feet had surgical wounds and weight bearing restrictions." [DN 1, at 4.] She has lodged six claims against Adams and Lourdes: (1) negligence against Adams; (2) willful and wanton negligence against Adams; (3) battery against Adams; (4) negligence against Lourdes; (5) willful and wanton negligence against Lourdes; and (6) battery against Lourdes. [*See generally id.*]

## B. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t][he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Moreover, "[t]he judge is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists." *Am. Guarantee and Liability Ins. Co. v. Norfolk S. Rwy. Co.*, 278 F. Supp. 3d 1025, 1037 (E.D. Tenn. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The party seeking summary judgment "may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply 'by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325). If the movant carries his or her burden here, "[t]he non-moving party…may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 47 U.S. at 586). Finally, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment; there must

be evidence on which the jury could reasonably find for the non-moving party." *Id.* (internal citations and brackets omitted). This means that "[i]f the [non-moving] party fails to make a sufficient showing on an[y] essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment." *Am. Guarantee and Liability Ins. Co.*, 278 F. Supp. 3d at 1037 (citing *Celotex*, 477 U.S. 323).

## C. Discussion

### 1. Lourdes's Motion for Partial Summary Judgment

The first motion at issue is Lourdes's motion for partial summary judgment on the issue of punitive damages. [DN 29.] It should be noted at the outset that Plaintiff, in her Response, argues that "punitive damages may be awarded when the evidence satisfies either the statutory standard of KRS 411.184(2), or the common law standard of gross negligence." [DN 32, at 6.] "Pursuant to KRS 411.184(2),[1] punitive damages are available if a plaintiff proves by clear and convincing evidence that a defendant acted with fraud, oppression, or malice. In addition, the Kentucky Supreme Court has determined that notwithstanding the statute, punitive damages are still available if gross negligence is shown." *Turner v. Werner Enters., Inc.*, 442 F. Supp. 2d 384, 385 (E.D. Ky. 2006) (citing *Williams v. Wilson*, 972 S.W.2d 260, 262-65 (Ky. 1998)). Thus, one method of securing punitive damages against a defendant would be to show that the defendant acted with (1) fraud, (2) oppression, or (3) gross negligence. While Plaintiff is technically correct in pointing out these legal standards, the fact remains that she is attempting to hold Lourdes vicariously liable for the actions of its employees and/or agents, and so this Court must look to vicarious liability principles in Kentucky law.

---

[1] "KRS 411.184(1)(c) was declared unconstitutional in *Williams v. Wilson*, [972 S.W.2d 260 (1998)], [but] the opinion specifically did not purport to affect other provisions of the statute." *See Berrier v. Bizer*, 57 S.W.3d 271, 283-84 (Ky. 2001); *see also Jones v. Blankenship*, No. 6:06-109, 2007 WL 3400115, at *2 (E.D. K.y. Nov. 13, 2007)).

When a plaintiff proceeds against an employer under the theory of vicarious liability, commonly referred to as *respondeat superior*,[2] courts applying Kentucky law look to KRS 411.184(3). "KRS 411.184(3) expressly prohibits the assessment of punitive damages against an employer for the conduct of an employee or agent, unless the offensive conduct was 1) authorized by the employer; 2) anticipated by the employer; or 3) ratified by the employer." *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 873 (Ky. 2016) (citing *Univ. Med. Ctr., Inc. v. Beglin*, 375 S.W.3d 783, 793-94 (Ky. 2011)). In this case, the tortious acts complained of are negligence, willful/wanton negligence, and/or battery on the part of Lourdes's employees and/or agents. [*See* DN 1.]

As Griffey is, in part, attempting to hold Lourdes vicariously liable for the conduct of various nurses, operating room staff, and Adams, KRS 411.184(3) controls this issue and so, in order to defeat Lourdes's instant motion, Griffey must present a genuine issue of material fact concerning one of authorization, anticipation, or ratification by Lourdes. *See* KRS 411.184(3). "Authorized" indicates that the employer gave "pre-approval of the conduct" in question. *Beglin*, 375 S.W.3d at 793. "[R]atification is, in effect, the after the fact approval of conduct, much as authorization is the before the fact approval of the conduct." *Id.* at 794. "[R]atification may be implied by the conduct of the employer…." *Thomas*, 487 S.W.3d at 874. Importantly though, ratification requires both "1) an after-the-fact awareness of the conduct; and 2) an intent to ratify it." *Id.* at 875 (citing *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 52-53 (Ky. 2008)). And with respect to the concept of anticipation, where the conduct at issue consists of "a gross deviation from well-established duties and policies" put in place to prevent a particular tortious act, an employer would not have been able to reasonably anticipate that tortious act. *See Beglin*,

---

[2] Under the well-known principle of *respondeat superior*, "[a]n employer is strictly liable for damages resulting from the tortious acts of his employees committed within the scope of his employment." *Univ. Med. Ctr., Inc. v. Beglin*, 375 S.W.3d 783, 792-93 (Ky. 2011) (citing *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005)).

5

375 S.W.3d at 794. However, with "anticipation," it is not necessary that the employer anticipate the exact *manner* in which an employee or agent commits a tortious act. *Patterson v. Tommy Blair, Inc.*, 265 S.W.3d 241, 244 (Ky. Ct. App. 2007). But "Kentucky courts applying this statute have authorized punitive damages only when the employer was aware that the employee [or employees] had previously engaged in similar unacceptable behavior or when the employer condoned the wrongful action taken by the employee [or employees.]" *Oaks v. Wiley Sanders Truck Lines, Inc.*, No. 07-45-KSF, 2008 WL 2859021, at *3 (E.D. Ky. Jul. 22, 2008) (citing *Kentucky Farm Bureau Mut. Ins. Co. v. Troxell*, 959 S.W.2d 82, 85-86 (Ky. 1997); *Kroger Co. v. Willgrober*, 920 S.W.2d 61, 68 (Ky. 1996)).

There is no indication in the Record that Lourdes authorized a procedure on Griffey's right foot instead of her left foot, or that Lourdes somehow authorized Adams to make the incision he did on her right foot, and Griffey has not otherwise shown that any sort of pre-approval of malfeasant conduct was given by Lourdes. Further, the fact that Lourdes authorized Adams and the other operating room staff to conduct the consented-to operation cannot lead to a conclusion that it authorized any allegedly grossly negligent conduct by any of these individuals. *See Jones v. Blankenship*, No. 6:06-cv-109, 2007 WL 3400115, at *3 (E.D. Ky. Nov. 13, 2007) (noting that it would be illogical to conclude that a defendant employer 'authorized' one of its drivers to operate a tractor trailer in a grossly negligent manner simply by authorizing him to drive the vehicle in the first place).

Next, despite Griffey's arguments, there is no evidence that Lourdes ratified Adams's conduct, or the conduct of any of the other operating room staff. As noted above, whereas authorization involves preapproval of conduct, ratification amounts to post-conduct authorization. *See Beglin*, 375 S.W.3d at 794. There is no dispute that Lourdes possessed "an

after-the-fact awareness of the conduct," that is, that the incorrect foot was prepped and an incision was made on it before Adams moved to the correct foot to commence the consented-to operation. *See Thomas*, 487 S.W.3d at 875. However, no evidence has been presented which would indicate that Lourdes actually intended to ratify this conduct afterwards, which is the second and crucial element. *See id.* Of course, as Griffey correctly points out in her Response, ratification need not manifest itself through "explicit affirmation or endorsement of the wrongful behavior." *Id.* at 874; *see also* [DN 32, at 25.] Instead, while "there must be an intention to ratify [the conduct],…the intention may be inferred from the facts and circumstances." *Thomas*, 487 S.W.3d at 874. Still though, "ratification cannot be inferred from acts which may be readily explained without involving any intent to ratify." *Id.*

In support of her argument that Lourdes implicitly ratified the underlying events of this case, Griffey points first to the deposition testimony of Kela Irvine, ("Irvine"), a surgical technologist, (a position often referred to as "scrub tech"), who was employed at Lourdes at the time in question. In her deposition, Irvine testified that she recalled Adams making "a small incision on the wrong foot." [DN 32-9, at 5, Irvine Dep., p. 9.] She further testified that, once Griffey's medical records were reexamined, it was determined that it was her left foot that required surgery and not the right one. [*Id.* at p. 11.] Next, Irvine testified that Nancy Edwards, ("Edwards"), who was a Director at Lourdes, came and spoke with Adams at the door to the operating room, (apparently without scrubbing in), after which time Adams completed the surgery on the left foot. [*Id.* at p. 11-12.] In contrast, Edwards testified at her deposition that she actually entered the operating room, although she testified that she remained clear of the "sterile field," and that she spoke with Adams from a distance of about three or four feet. [DN 32-12, at 10-11, Edwards Dep., p. 14-15.] Edwards confirmed that she permitted Adams to continue the

7

surgery on the correct foot. [*Id.*] In Griffey's view, the conflicting testimony of Irvine and Edwards regarding her exact placement in the operating room, as well as Edwards's acquiescence to Adams's continuing the surgery, amounts to an implicit ratification of the wrongful conduct.

The Court finds this argument to be without merit. Edwards's exact placement when she talked with Adams does not ultimately bear upon this Court's analysis at all. More importantly though, Edwards allowing Adams to successfully operate on the correct foot does not constitute an implicit ratification of his previously-done wrongful conduct. There is simply no evidence in the Record that Edwards ratified Adams's conduct, whether explicitly or implicitly. Moreover, although Griffey cites to the deposition testimony of Edwards's supervisor, Zandra Farley, ("Farley"), arguing that the post-operative investigation conducted by Farley was "lackadaisical at most," the Court is not persuaded that this amounts to ratification. [*See* DN 32, at 29-30.] Farley testified that she did not speak with Day after the surgery, but that she did speak with Adams, and that he told her he had spoken to Griffey's husband about what had happened. [DN 32-10, at 5, Farley Dep., p. 10.] But even setting aside the fact that an allegedly shoddy investigation does not amount to implicit ratification of wrongful conduct, Farley also testified in her deposition that the reason she did not speak to Day was because she "was not the direct supervisor." [*Id.*] And as the Kentucky Supreme Court has noted on this issue, "ratification cannot be inferred from acts which may be readily explained without involving any intent to ratify." *Thomas*, 487 S.W.3d at 874. Finally, Griffey argues that "[t]raining also seems lax or nonexistent" at Lourdes. [DN 32, at 30.] This is a different issue altogether, and does not go to the question of Lourdes's ratification. In short, the Court finds no ratification from Lourdes concerning the wrongful conduct which transpired in the operating room.

The final method by which Griffey could satisfy KRS 411.184(3) is by showing that Lourdes should have anticipated the events which transpired in the operating room that day. *See* KRS 411.184(3). In her Response, Griffey makes no substantive argument that Lourdes should have anticipated that Adams would have commenced an operation on the wrong appendage. However, as the District Court for the Eastern District of Kentucky noted in *Jones*, in order for an employer to have been able to anticipate an employee's acts, a plaintiff "must present evidence that during [the individual's] employment with [the employer], [the individual] exhibited a pattern of conduct similar to the alleged gross negligence, such that [the employer] should have reasonably expected the conduct to occur." *Jones*, 2007 WL 3400115, at *4 (citations omitted); *see also Troxell*, 959 S.W.2d at 85-86. No allegations have been made, and no evidence has been adduced, which would show that Adams has engaged in any pattern of behavior such that Lourdes should have reasonably expected him to make a surgical incision on the wrong foot. Accordingly, the Court finds that Lourdes could not have reasonably anticipated such an event to occur.

Due to the fact that Griffey has not presented more than a scintilla of evidence that Lourdes (1) authorized any of the underlying wrongful conduct, (2) ratified any such conduct, or (3) should have anticipated any such conduct, it necessarily follows that Lourdes cannot, as a matter of law, have punitive damages assessed against it for tortious conduct committed by its employees and/or agents. The Court will grant Lourdes's motion.

### 2. Adams's Motion for Partial Summary Judgment

The second motion at issue is Adams's motion for partial summary judgment on Griffey's claim for willful/wanton negligence against him and, consequently, her claim of entitlement to punitive damages stemming therefrom. [DN 45.] Because it appears that a genuine

9

dispute of material fact remains with respect to Adams, his motion must be denied. The Court can better evaluate this issue after the close of all the evidence.

While KRS 411.184(3) controls the issue of whether punitive damages may be assessed against an employer by way of vicarious liability, KRS 411.184(2) controls the assessment of punitive damages directly against a defendant. As noted above, "punitive damages are available if a plaintiff proves by clear and convincing evidence that a defendant acted with fraud, oppression, or malice." *Turner*, 442 F. Supp. 2d at 385 (citing *Williams*, 972 S.W.2d at 262-65). Moreover, although the "malice" provision was found to be unconstitutional, *Berrier*, 57 S.W.3d at 283-84, a showing of gross negligence remains sufficient. *Turner*, 442 F. Supp. 2d at 385. In the present case, Adams's liability for ordinary negligence has been stipulated to, and the question, therefore, is whether Griffey has presented more than a scintilla of evidence that Adams also demonstrated *gross* negligence in commencing a surgical procedure on the incorrect foot. The Court finds that she has done so.

First, Adams was not unfamiliar with Griffey and her left foot ailment. Indeed, Adams had previously been treating Griffey's left foot injury, and when her symptoms did not improve, it was Adams who recommended surgery. [*See* DN 47-1 (Medical Progress Note, Aug. 31, 2015).] Adams's familiarity with Griffey and the fact that it was her left foot that was giving her trouble begs the question of how he commenced a surgical procedure on her right foot. Second, Adams actually marked Griffey's left foot with his initials prior to commencing surgery on the incorrect foot, which did not have any such markings on it. [*See* DN 47-10, at 11-12, Day Dep., p. 18-19.]

Additionally, the physical medical chart that was in the operating room with Adams and the other medical staff specified the left foot and not the right one, [*id.* at p. 14-15], and

Lourdes's "time out" policy was apparently not followed prior to the commencement of the surgery. The time out policy at Lourdes dictates that, immediately prior to a surgical procedure, "[a] formal 'time out' involving the entire operative/procedural team is done," during which time a member of the procedural team pauses the entire group and receives confirmations from everyone that, among other things, the correct patient is being operated on and the correct site has been marked for surgery. [*See* DN 44-12, at 3-4 (Lourdes Time Out Policy).] The time of the first time out taken by the procedural team assigned to Griffey for her operation occurred at 12:12 p.m., according to the Intraoperative Nurse's Record. [DN 47-5.] But according to that same document, surgery commenced at 12:08 p.m. [*Id.*] To be sure, the surgeon who is performing a given procedure is not always assigned the task of leading the time out prior to commencing a procedure, but it appears that no time out was taken at all in this case before the surgery started, something that Adams may have disregarded prior to cutting into Griffey's right foot. Adams does not appear to deny that no time out was taken prior to the first incision. [*See* DN 45-1, at 3 ("[a]s Dr. Adams started his incision, the anesthetist advised that his chart indicated 'left'…A time-out was taken.").]

These actions, taken together, lead the Court to the conclusion that a genuine issue of material fact may remain concerning whether Adams exhibited gross negligence in commencing Griffey's operation on the incorrect foot. Accordingly, Adams's motion must be denied.

### 3. Griffey's Motion for Partial Summary Judgment

The third motion at issue is Griffey's motion for partial summary judgment on the issue of liability. [DN 43.] Adams did not file a Response, and Lourdes's Response spans only around one page and stipulates to its liability as to two of Griffey's three claims. Specifically, Lourdes's Response contains the following statement:

> [f]or purposes of the plaintiff's Motion for Summary Judgment only, this defendant admits that summary judgment on the single issue of liability should be granted to the plaintiff. Issues concerning the apportionment of fault as between the co-defendants, Dr. Adams and Lourdes…should be reserved and determined by a trial of this matter. In addition, the amount of compensatory damages which the plaintiff is entitled to should likewise be submitted to a jury for its determination…The plaintiff's demand for punitive damages as set out in her Complaint should be dismissed as it relates to Lourdes….

[DN 46, at 1.] The Court construes this statement as Lourdes's stipulation to its liability for (1) negligence, and (2) medical battery (counts four and six of Griffey's Complaint). The Court has already dismissed any punitive damages claim against Lourdes earlier in this Memorandum Opinion, and so there is no need for further discussion of Griffey's now-dismissed claim for willful/wanton negligence against Lourdes.

Although Adams did not file a direct Response to Griffey's instant motion, in his Reply to Griffey's Response to *his* motion for partial summary judgment, Adams states that "[t]he only dispute is whether, as a matter of law, a punitive damages claim may be submitted to the jury." [DN 48, at 1.] Further, Adams notes that "there is no dispute that an incision was incorrectly made on Mrs. Griffey's right foot when surgery had been scheduled for Mrs. Griffey's left foot." [*Id.*] Then, Adams concedes that operating on the wrong foot was "only ordinary negligence." [*Id.* (internal quotation marks and citations omitted).] While it appears that Adams, like Lourdes, has stipulated to negligence, out of an abundance of caution, the Court will analyze the issue of medical battery in more depth as it pertains to Adams, as those allegations are not explicitly referred to in his aforementioned Reply.

"[M]edical battery is an intentional tort, and as such, it contains all of the essential elements of a common law claim of battery." *Hoofnel v. Segal*, 199 S.W.3d 147, 150 (Ky. 2006) (citing *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000)). As explained by the Kentucky Supreme Court, "Kentucky case law defines common law civil battery simply as 'any unlawful

touching of the person of another, either by the aggressor himself, or by any substance set in motion by him.'" *Vitale*, 24 S.W.3d at 657 (quoting *Sigler v. Ralph*, 417 S.W.2d 239, 241 (1967)). A claim for medical battery will lie where a physician operates without a patient's consent. *Id.* This is true regardless of whether the physician proceeded with intent to harm the patient. *Id.* This is analogous to regular, common law battery, where "[t]he intent necessary…is not necessarily a hostile intent, or a desire to do any harm," but rather, "it is an intent to make contact with the person…." *Id.* (internal quotation marks and citations omitted).

While Adams has not explicitly stipulated to his liability for medical battery, the Court finds that such liability is properly imposed upon him. When Adams admitted that there was "no dispute that an incision was incorrectly made on Mrs. Griffey's right foot when surgery had been scheduled for Mrs. Griffey's left foot," Adams essentially admits to having committed the tort. This is bolstered by the fact that the consent form Griffey signed prior to surgery explicitly refers only to her left foot. [DN 32-3, at 1.] Because the uncontroverted evidence demonstrates that Adams commenced an operation on a body part for which he did not possess consent, the Court finds that summary judgment in favor of Griffey is appropriate on her claim for medical battery against Adams.

Finally, insofar as Griffey has asked this Court to enter summary judgment in her favor as to Adams's liability on her claim of willful/wanton negligence, her motion must be denied. Although the Court found above that a genuine dispute of material fact remains concerning the issue of whether, in addition to demonstrating ordinary negligence, Adams acted with gross negligence, it is far from certain that he actually did so. To be sure, various facts, such as his knowledge of Griffey's medical history, his marking of the correct foot and operating on the wrong foot, and his failure to recognize that no time out was taken before the operation

commenced, may all go towards the question of whether he exhibited gross negligence. However, in considering the specific facts of this case, the Court finds that the issue of whether Adams demonstrated willful/wanton negligence can be better determined at the end of the proof.

### D. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Lourdes's motion for partial summary judgment, [DN 29], is **GRANTED**. Griffey's claim for willful/wanton negligence and punitive damages against Lourdes is hereby dismissed with prejudice.

2. Adams's motion for partial summary judgment, [DN 45], is **DENIED**.

3. Griffey's motion for partial summary judgment, [DN 43], is **GRANTED** as to Lourdes's and Adams's liability for negligence and medical battery and **DENIED** as to Griffey's claims for willful/wanton negligence against Lourdes and Adams.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 22, 2018

cc: Counsel of Record